**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| BERKLEY INSURANCE COMPANY,<br>475 Steamboat Road<br>Greenwich, CT 06830<br><br>       Plaintiff,<br><br>       v.<br><br>HOLZMAN HORNER PLLC,<br>1300 I Street Northwest, Suite 400E<br>Washington, DC 20005<br><br>       Defendant. | CASE NO.: _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT AND FOR**
**REIMBURSEMENT OF DEFENSE EXPENSES**

Plaintiff Berkley Insurance Company (hereinafter "Berkley"), by and through its undersigned counsel, Kiernan Trebach LLP, and pursuant to 28 U.S.C. §§ 1332 and 2201, hereby files its Complaint for Declaratory Judgment and for Reimbursement of Defense Expenses seeking a declaration that (a) Berkley does not owe a defense or indemnity to Defendant Holzman Horner PLLC (hereinafter "Holzman Horner") with regard to an underlying arbitration styled *Christopher Horner v. Aspen Electronics Manufacturing, Inc.., and A. Joseph Valdez, as trustee of the Aspen Electronics Manufacturing, Inc. Employee Stock Ownership Trust,* JAMS No. 5410000030 (hereinafter the "Arbitration"); (b) in the alternative, Berkley is not obligated to pay Holzman Horner any further indemnity or attorney's fees under the Insurance Policy's Consent to Settle Clause following its recommendation that Holzman Horner accept a settlement proposal in the Arbitration; and (c) Berkley can recover the fees and related defense expenses it has incurred defending Holzman Horner against counterclaims asserted in the Arbitration. Berkley further requests a money judgment (a) against Holzman Horner determining the amount of fees and related

defense expenses Berkley has incurred defending Holzman Horner against counterclaims asserted

in the Arbitration, and (b) against Holzman Horner for that amount.  The grounds for Berkley's

claims are set forth below.

## PARTIES

1.      Berkley is an insurance company incorporated under the laws of the State of

Delaware with its principal place of business in Greenwich, Connecticut.

2.      Holzman Horner is a law firm operating as a professional limited liability company

law firm with its principal place of business in the District of Columbia.

## JURISDICTION

3.      This Court has jurisdiction over this action under 28 U.S.C. § 1332 because there

is a complete diversity of citizenship between Berkley and Holzman Horner.  Berkley is a

Delaware Corporation with its principal place of business in Connecticut, while Defendant is a

professional limited liability company with its principal place of business in the District of

Columbia.  Upon information and belief, none of the principals of Holzman Horner PLLC are

citizens of Connecticut or Delaware.

4.      The amount in controversy exceeds $75,000, as the *ad damnum* of the relevant

Counterclaim (defined below), plus the attorney's fees sought by Holzman Horner, exceed $75,000

combined. Moreover, the insurance policy at issue affords coverage subject to a per claim limit of

liability of $3,000,000.

5.      This Court has jurisdiction to determine and declare the parties' respective rights

and obligations under their insurance agreement under 28 U.S.C. § 2201, because there is an actual

controversy between the parties as to such rights and obligations.

**VENUE**

6.      Venue is proper in this Court because the events giving rise to the underlying Arbitration took place primarily in the District of Columbia and because the Berkley Policy was delivered in the District of Columbia.

**FACTS COMMON TO ALL COUNTS**

**A.      The Berkley Policy**

7.      Berkley afforded certain Lawyers Professional Liability Insurance coverage to Holzman Horner under Policy Number PLP-1730816, effective from April 16, 2021, to April 16, 2022, subject to a per-claim and aggregate non-eroding limit of liability of $3 million (the "Policy").  A true and correct copy of the Policy is attached hereto as **Exhibit A**.

8.      The Policy is subject to a per-claim deductible of $10,000, which applies to both "Damages" and "Claim Expenses", as those terms are defined in the Policy.

9.      The Policy's Insuring agreement includes four components: (A) Lawyers Professional Liability Insurance Coverage, (B) Defense, (C) Settlement, and (D) Exhaustion of Limit.

10.      Insuring Agreement part A – Lawyers Professional Liability Insurance (as amended by endorsement) provides (boldfaced terms are defined terms in the Policy[1]):

> The **Insurer** agrees to pay on behalf of the **Insured** all sums in excess of the deductible, up to the Limit of Liability, that the **Insured** shall become legally obligated to pay as **Damages** and **Claim Expenses** because of a **Claim** that is both first made against the **Insured** and reported in writing to the **Insurer** during the **Policy Period**, or any Extended Reporting Period, if applicable, by reason of an act or omission in the performance of **Legal Services** by the **Insured** or by any person for whom the Insured is legally liable, while acting on behalf of the **Named Insured** and/or **Predecessor Firm** for clients of the **Named Insured** and/or **Predecessor Firm** provided that:
>
> 1. no **Insured** gave notice to a **Prior Insurer** of such **Claim** or a **Related Claim**; and/or

---

[1] Hereinafter throughout this Complaint boldfaced terms in quotations of the Policy are defined terms in the Policy.

2. no **Insured** gave notice to a **Prior Insurer** of any such act or omission or **Related Act or Omission**; and/or

3. prior to the inception date of the first policy if continuously renewed, or the date the **Insured** first became a member or employee of the **Named Insured** and/or **Predecessor Firm**, whichever is later, no Insured had a basis to believe that any such act or omission, or **Related Act or Omission**, might reasonably be expected to be the basis of such **Claim**.

4. such act or omission occurred on or after April 16, 2015.

(Exhibit A, I. Insuring Agreement A. (as amended by "Amend Insuring Agreement to Remove Career Coverage" and "Addition of Prior Acts Date").)

11.     Under the policy, "Claim" is defined as follows:

**Claim** means a demand for money or services, including the service of suit or the institution of any alternative dispute resolution proceeding, received by the **Insured** arising out of an act or omission, including **Personal Injury**, in the rendering of, or failure to render **Legal Services**.

(Exhibit A, III. Definitions B.)

12.     The Policy defines "Claims Expenses" in relevant part as: "fees charged by attorneys designated by the **Insurer**, or by the **Insured** with the **Insurer's** written consent" or "all other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim** if incurred by the **Insurer**, or by the **Insured** with the written consent of the **Insurer**, including, but not limited to, premiums for any appeal bond, attachment bond or similar bond but without any obligation of the Insurer to apply for or furnish any such bond . . . ." (Exhibit A, III. Definitions C.1 & 2.)

13.     In other words, 'Claims Expenses' includes expenses of responding to the claim, provided that the expenses are incurred with the consent of Berkley.

14.     The Policy provides that "Claim Expenses do not include fees, costs or expenses of employees or officers of the Insurer.  Nor shall Claim Expenses include salaries, loss of earnings or other remuneration by or to any Insured."

15.     Expenditure of "Claims Expenses" does not reduce the available limit of liability to pay "Damages."  "Claim Expenses" is subject to a separate and equal limit of liability as that available for the payment of "Damages."

16.     "Damages" is defined, in relevant part, as follows:

> **Damages** means judgments, awards and settlements (including pre-judgment interest), provided all settlements are negotiated with the assistance and approval of the **Insurer**.  **Damages** also includes punitive and exemplary damages, and the multiple portions thereof, to the extent that such damages are insurable under the law of the most favorable applicable jurisdiction.  **Damages** do not include:
>
> 1. legal fees, costs and expenses paid or incurred or charged by any Insured, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing;. . . or . . . .
>
> 4. any amount for which an **Insured** is absolved from payment by reason of any covenant, agreement or court order.

(Exhibit A, III. Definitions D.1 & 4.)

17.     Under the Policy, "Legal Services" is defined as follows:

> **Legal Services** means:
>
> 1. those services, including pro bono services, performed by an **Insured** for others as a lawyer, arbitrator, mediator, title agent or other neutral fact finder or as a notary public.  Any title agency or insurer, on whose behalf the **Insured** acts as title agent or designated issuing attorney, is not an **Insured** under this Policy unless such title agency is a wholly owned subsidiary of the **Named Insured;**
>
> 2. those services performed by an Insured as an administrator, conservator, receiver, executor, guardian, trustee or in any other fiduciary capacity;
>
> 3. those services performed by an Insured in their capacity as a member of a bar association, ethics, peer review, formal accreditation, licensing, or similar professional board or committee related to the legal profession, or
>
> 4. those services performed by an Insured as an author, strictly in the publication or presentation of research papers or similar materials and only if the fees, royalties or other revenue generated from such work are not greater than $10,000.
>
> For the purpose of this definition, services performed by an **Insured** in a lawyer-client relationship on behalf of one or more clients shall be deemed **Legal Services** in the **Insured's** capacity as a lawyer, although such services could be performed wholly or in part by non-lawyers.

(Exhibit A, III. Definitions H.)

18.     The Policy also affords Berkley with "the right and duty to defend, in the **Insured's** name and on the **Insured's** behalf, a **Claim** seeking **Damages** covered by this Policy even if any of the allegations of the **Claim** are groundless, false or fraudulent."  This includes the right to appoint counsel, as Berkley has done in this case.  (Exhibit A, I. Insuring Agreement B.)

19.     The Insuring Agreement's third part, Part C (Settlement), includes a "Consent to Settle Clause" which provides that:

> The **Insurer** shall not settle any **Claim** without the **Named Insured's** consent. If, however, the **Named Insured** shall refuse to consent to any settlement recommended by the **Insurer**, which is acceptable to the claimant, and shall elect to contest the **Claim**, or continue any legal, administrative, or arbitration proceedings in connection with such **Claim**, then the **Insurer's** liability for the **Claim** shall not exceed the amount for which the **Claim** could have been settled, including **Claim Expenses** incurred up to the date of such refusal. Such amounts are subject to the provisions of section II. Limit of Liability and Deductible. In the event that the **Named Insured** refuses to consent to any settlement recommended by the **Insurer**, which is acceptable to the claimant, the **Insurer's** right and duty to defend such **Claim** shall end upon the date of such refusal.

(Exhibit A, I. Insuring Agreement C.)

20.     Part D of the Insuring Agreement provides that Berkley's obligation under the Policy ends when it has exhausted its limit of liability by payment of either "Damages" or "Claim Expenses" or any combination thereof.

21.     The Policy has several potentially pertinent exclusions:

> This Policy does not apply:
>
> **A. Intentional Acts**
> to any **Claim** based on or arising out of any dishonest, illegal, fraudulent, criminal, or malicious act or omission or intentional wrongdoing by an **Insured**; provided, however:
>
> 1.  this exclusion shall not apply to **Personal Injury**;
>
> 2.  the **Insurer** shall provide the **Insured** with a defense of such **Claim** unless or until the dishonest, fraudulent, criminal, malicious act or omission or intentional wrongdoing has been determined by any trial verdict, court ruling, regulatory ruling or legal admission, whether appealed or not. Such defense will not waive any of the **Insurer's** rights under this Policy. Criminal proceedings are not covered under this Policy regardless of the allegations made against any **Insured**;

6

this exclusion will not apply to any **Insured** who is not found to have personally committed the dishonest, fraudulent, criminal, malicious act or omission or intentional wrongdoing by any trial verdict, court ruling, or regulatory ruling;

\* \* \*

**D. Contractual Liability**
to any **Claim** based on, or arising out of, or in any way involving an **Insured's** alleged liability under any oral or written contract or agreement, unless such liability would have attached to any Insured in the absence of such agreement;

(Exhibit A, IV. Exclusions A, D.)

22.     The Policy's Conditions provide:

**E. Assistance and Cooperation of the Insured**

1. The **Insured** shall cooperate with the **Insurer** and, upon the insurer's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving of evidence,  obtaining the attendance of witnesses, and the conduct of suits and proceedings in connection with a **Claim**.

2. The **Insured** shall assist in the enforcement of any right of contribution or indemnity against any person or organization who or which may be liable to any Insured in connection with a **Claim**.

3. The **Insured** shall not, except at its own cost, voluntarily make any payment, assume or admit any liability or incur any expense without the consent of the **Insurer**.

(Exhibit A, V. Policy Conditions E.)

**B.     The Underlying Dispute and Arbitration**

23.     The Arbitration arises out of a representation undertaken by Holzman Horner to provide Aspen Electronics Manufacturing Inc., and A. Joseph Valdez (collectively "Aspen") with certain advice and prepare certain agreements with respect to what was initially contemplated to be an asset sale with another entity, Tide Rock Holdings, LLC (hereinafter the "Transaction").

24.     A true and and correct copy of Aspen's Response is attached hereto as **Exhibit B.**

25.     After spending several weeks and over 80 hours performing due diligence work regarding the Transaction, Holzman Horner advised Aspen that the tax consequences of an asset-only transaction would be unfavorable.

7

26.     More specifically, Holzman Horner advised Aspen that rather than incurring the likely double tax that the Transaction as currently constructed would entail, Aspen should attempt to restructure the Transaction as a stock sale.

27.     Tide Rock Holdings, LLC declined to restructure the Transaction as a stock sale, and declined to pursue the Transaction further.

28.     On or about December 1, 2021, Holzman Horner sent Aspen a draft bill for attorney's fees in the amount of $50,600 for its services rendered with respect to the Transaction.

29.     In response, on or about December 22, 2021, Aspen proposed resolving the outstanding invoice for $22,500, representing the sum of the $15,000 retainer fee plus an additional $7,500, in view of what Aspen viewed as the Firm's failure to recognize the taxation issue until it had billed 83.6 hours to Aspen.

30.     In response to Aspen's offer, Holzman Horner initiated the Arbitration on December 23, 2021, seeking to recover $48,100 in attorney's fees that it now claimed it was owed.

31.     On January 5, 2022, Holzman Horner sent a final invoice to Aspen for $63,100, which incorporated an additional $15,000 representing the retainer that Holzman Horner returned to Aspen.

32.     Aspen asserts that it immediately mailed a check to Holzman Horner for $63,100 in an attempt to satisfy the outstanding attorney's fees claim and resolve the Arbitration.

33.     Aspen asserts that Holzman Horner received and deposited Aspen's $63,100 check.

34.     On January 7, 2023, Holzman Horner demanded that, in addition to the $63,100 charge for attorney's fees, Aspen pay it an additional $18,000+ for attorney time and other expenses that Holzman Horner had allegedly incurred in pursuing the Arbitration.

35.     Aspen filed a counterclaim in the Arbitration against Holzman Horner for professional negligence due to Defendant's failure to advise Aspen of the double taxation issue before incurring thousands of dollars in fees (the "Counterclaim").

36.     Aspen's Counterclaim seeks to recover the attorney's fees and costs that Aspen incurred during Holzman Horner's representation of it in connection with the Transaction and that it had paid after receiving Defendant's January 5, 2022 invoice.

37.     Holzman Horner and Aspen attempted to resolve all claims through formal mediation, in which Berkley also participated.

38.     At or following the mediation, Aspen made a demand to settle the attorney negligence claim for a payment of $63,100 (the amount it paid to Holzman Horner in attorney's fees in connection with its work on the Transaction), provided that the Holzman Horner agree to judgment against it on its claim for unpaid fees.

39.     Berkley indicated that it would fund that settlement for $63,100 on behalf of Holzman Horner, and recommended that Defendant resolve the matter.

40.     Holzman Horner has refused to accept Aspen's demand because of Aspen's requirement that Defendant agree to a judgment against it.

## C.     Coverage Issues

41.     Holzman Horner submitted a claim under the Policy seeking defense and indemnity from Berkley in connection with the Counterclaim in the Arbitration.

41.     In correspondence dated May 2, 2022, Berkley advised Holzman Horner, *inter alia*, that: "The Policy potentially indemnifies only for covered Damages.  At this time, it appears that the Potential Claimants are only challenging the reasonableness of the fees paid to the Insured.  A dispute regarding legal fees charged by an insured is excluded from the definition of Damages.  If

and to the extent liability is imposed on the Insured for any amounts which are not Damages as defined in the Policy, such liability will not be indemnified by Berkley." (A true and correct copy of the May 2, 2022 letter is attached hereto as **Exhibit C**.)

42.    Holzman Horner initially defended itself against the Counterclaim in the Arbitration.

43.    Berkley has offered to fund the $63,100 settlement for its policyholder, Holzman Horner.

44.    Berkley subsequently appointed defense counsel to represent Holzman Horner in connection with the Arbitration and at the request of Holzman Horner.

45.    On August 14, 2023, Berkley (through its counsel) sent Holzman Horner a letter reserving the rights to disclaim coverage, withdraw its appointment of defense, file a declaratory judgment action, and recover "amounts expended in the defense of Holzman Horner for uncovered claims or for the amounts expended in the defense of potentially covered claims after Holzman Horner declined to consent to settlement." (A true and correct copy of the August 14, 2023 letter is attached hereto as **Exhibit D**.)

46.    Berkley does not have a duty to defend or indemnify Holzman Horner because the Counterclaim in Arbitration seeks a return of attorney's fees that had been charged to its former client, Aspen, by Holzman Horner, and attorney's fees are specifically omitted from the Policy's definition of "damages."

47.    Similarly, the Policy's Consent to Settle Clause relieves Berkley of the duty to defend and caps any indemnity obligation at the amount of the settlement proposal in the underlying matter when the policyholder refuses to consent to a settlement offer that Berkley is willing to pay as occurred here.

48.     In addition, Berkley is entitled to recoup (a) the Defense Expenses paid by Berkley for defending Holzman Horner in the Arbitration after Defendant refused to consent to Berkley's offered to pay $63,100 to settle the Arbitration, and which Aspen was willing to accept; and/or (b) the Defense Expenses paid by Berkley for defending Holzman Horner against claims that fall outside the Policy's coverage.

49.     Moreover, Berkley is entitled to recoup from Holzman Horner the attorney's fees it paid with regard to the Arbitration that are allocable to Holzman Horner pursuing its claims against Aspen.

## COUNT I: DECLARATORY JUDGMENT

**No Coverage because the Counterclaim Does Not Seek "Damages"**

50.      Berkley re-alleges Paragraphs 1- 49 as if fully set forth herein.

51.     Aspen's counterclaim against Holzman Horner seeks to recover amounts paid by Aspen as attorney's fees to Holzman Horner for its representation of Aspen in connection with the Transaction, based upon Defendant's alleged malpractice.

52.     The Insuring Agreement obligates Berkley "to pay on behalf of the 'Insured' all sums in excess of the deductible, up to the Limit of Liability, that the 'Insured' shall become legally obligated to pay as 'Damages' and 'Claim Expenses' because of a 'Claim'. . . by reason of an act or omission in the performance of 'Legal Services' by the 'Insured' . . . ."

53.     The Policy's definition of "Damages" specifically excludes "legal fees, costs and expenses paid or incurred or charged by any 'Insured', **no matter whether claimed as restitution of specific funds, forfeiture**, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing . . . ."  (emphasis added).

54.     Aspen's Counterclaim against Holzman Horner does not seek "Damages," as they are defined under the Policy.  Instead, the Counterclaim seeks only to recover monies paid by Aspen to Holzman Horner for legal fees charged by Holzman Horner.

55.     Therefore, pursuant to the Insuring Agreement, coverage under the Berkley Policy does not apply to the Aspen Counterclaim in the Arbitration and Berkley has no duty to defend or indemnify Holzman Horner against the Counterclaim.

## COUNT II: DECLARATORY JUDGMENT

**Alternatively, the Consent to Settle Clause Limits Berkley's Indemnity Liability and Extinguishes its Duty to Defend**

56.     Berkley re-alleges Paragraphs 1-49 as if fully set forth herein.

57.     To the extent that the Policy is determined to provide coverage for Holzman Horner's defense against Aspen's Counterclaim in the Arbitration, legal responsibility for which is expressly denied, the duty to indemnify under the Policy is limited to the $63,100 that Berkley offered to pay to fund the settlement with Aspen, which was accepted by Aspen, but that Defendant rejected.

58.     Additionally, by reason of Holzman Horner's refusal to consent to the settlement for $63,100 that Berkley offered to pay and Aspen accepted, Berkley's duty to defend has been extinguished.

59.     The Policy's Consent to Settle clause provides as follows:

> The **Insurer** shall not settle any **Claim** without the **Named Insured's** consent. If, however, the **Named Insured** shall refuse to consent to any settlement recommended by the **Insurer**, which is acceptable to the claimant, and shall elect to contest the **Claim**, or continue any legal, administrative, or arbitration proceedings in connection with such **Claim**, then the **Insurer's** liability for the **Claim** shall not exceed the amount for which the **Claim** could have been settled, including **Claim Expenses** incurred up to the date of such refusal. Such amounts are subject to the provisions of section II. Limit of Liability and Deductible. In the event that the **Named Insured** refuses to consent to any settlement recommended by the **Insurer**, which is acceptable to the claimant, the **Insurer's** right and duty to defend such **Claim** shall end upon the date of such refusal.

60.     The claimant, Aspen, has expressed a willingness to settle the Counterclaim for $63,100.

61.     Berkley recommended that Holzman Horner accept the settlement offer of $63,100 and indicated that it would fund the settlement.

62.     Nevertheless, Holzman Horner has elected to continue contesting the claim and pursuing the Arbitration.

63.     Therefore, under the "Consent to Settle" clause, Berkley's liability with respect to the Counterclaim shall not exceed $63,100, the amount for which the Counterclaim could have been settled.

64.     In addition, pursuant to the "Consent to Settle" clause, Berkley's paid "Claim Expenses" shall not exceed the amount incurred as of the date that Holzman Horner refused to consent to settle, as recommended by Berkley.

65.     Moreover, Berkley's duty to defend the Counterclaim officially terminated on the date that Holzman Horner refused to consent to settle, as recommended by Berkley.

## COUNT III: DECLARATORY JUDGMENT

**Berkley Is Not Obligated to Pay Holzman Horner its Attorney's Fees for Defending Itself against the Counterclaim.**

66.     Berkley re-alleges Paragraphs 1-49 as if fully set forth herein.

67.     The Aspen Counterclaim seeks to recover attorney's fees and costs, both of which are not included under the definition of "Damages" in the Policy.

68.     Under the Policy, defense and indemnity for the Counterclaim are not even potentially covered.

69.     Berkley is therefore entitled to recoup from Holzman Horner any and all Defense Expenses it has paid in connection with the defense of the Counterclaim.

## COUNT IV: DECLARATORY JUDGMENT

**Berkley Is Not Obligated to Pay Holzman Horner its Attorney's Fees After It Refused to Settle the Counterclaim.**

70.    Berkley re-alleges Paragraphs 1-49 as if fully set forth herein.

71.    Under the Insuring Agreement, Berkley is obligated to pay "Damages" and "Claims Expenses", each up to a $3 million limit, in connection with the defense of a covered claim.

72.    Even if this Court determines that Berkley is obligated pursuant to the Policy to provide indemnity and/or defense for the Counterclaim, defense and indemnity is not even potentially covered following Holzman Horner's refusal to consent to settlement of $63,100.

73.    Berkley is, at a minimum, entitled to recoup from Holzman Horner any and all defense costs it has paid in connection with the defense of the Counterclaim following Holzman Horner's refusal to consent to settlement of $63,100.

## COUNT V:  DECLARATORY JUDGMENT

**Berkley Is Not Obligated to Pay Holzman Horner for Defending Itself Against the Counterclaim**

74.    Berkley re-alleges Paragraphs 1-49 as if fully set forth herein.

75.    Even if the Counterclaim constitutes a covered claim—which it does not— Holzman Horner is not entitled to collect payment from Berkley for the attorney time and other expenses it incurred for self-defending against the Counterclaim.

76.    The Policy defines "Claims Expenses" as "fees charged by attorneys designated by the 'Insurer', or by the 'Insured' with the Insurer's written consent" or "all other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a 'Claim' if incurred by the Insurer, or by the 'Insured' with the written consent of the Insurer,

14

including, but not limited to, premiums for any appeal bond, attachment bond or similar bond but without any obligation of the Insurer to apply for or furnish any such bond . . . ."

77.    The Policy provides that "Claim Expenses do not include fees, costs or expenses of employees or officers of the Insurer.  Nor shall Claim Expenses include salaries, loss of earnings or other remuneration by or to any Insured."

78.    Thus, under the Policy, Holzman Horner's attorney's fees, costs, and expenses incurred for self-defending and that would be paid to Holzman Horner do not constitute covered "Claim Expenses," and, therefore, Berkley is not required to reimburse Holzman Horner for any such fees, costs, and expenses.

## COUNT VI:  QUASI-CONTRACT

### Determination and Reimbursement of Payments of Attorney's Fees

79.    Berkley re-alleges Paragraphs 1-49 as if fully set forth herein.

80.    Berkley's duty to defends extends only with respect to "Claim(s) seeking Damages covered by this Policy", and the Aspen Counterclaim does not seek "Damages covered by this Policy".  Berkley was not obligated to provide a defense under this provision, but it has retained and paid defense counsel pursuant to this contractual provision under a reservation of rights.

81.    Alternatively, and/or additionally, Berkley's right and duty to defend Aspen's Counterclaim against Defendant ended upon the date that Holzman Horner refused to consent to Berkley's offer to settle with Aspen, an offer which Aspen had accepted.

82.    Berkley is entitled to reimbursement of all or a portion of attorney's fees and other Claim Expenses it paid in defending Holzman Horner against Aspen's Counterclaim.

83.     Berkley has a right of reimbursement implied in law of Claim Expenses it paid on

Holzman Horner's behalf, either in their entirety, or, alternatively since the date that Defendant

refused to consent to the $63,100 settlement.

## COUNT VII:  UNJUST ENRICHMENT

### Alternative Claim for Reimbursement of Payments of Attorney's Fees

84.     Berkley re-alleges Paragraphs 1-49 as if fully set forth herein.

85.     Berkley has paid Claim Expenses including attorney's fees and other costs for

defending Holzman Horner against Aspen's Counterclaim.

86.     Berkley thereby conferred a valuable benefit upon Holzman Horner.

87.     Berkley and Holzman Horner did not contract for this benefit in these

circumstances, as the parties agreed that Defendant would be entitled to have its Claim Expenses

covered by Berkley only with respect to "Claim(s) seeking Damages covered by this Policy",

and/or only up until Defendant refused to consent to a valid settlement.

88.     Holzman Horner did not compensate Berkley for this benefit as Defendant's

premium for insurance coverage did not include such a benefit.

89.     As a result of the foregoing, Defendant has been unjustly enriched by receiving

benefits for which it did not pay.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff Berkley Insurance Company hereby

seeks:

(a)     A declaratory judgment that it owes no duty to defend and no duty to indemnify

Holzman Horner against the Aspen Counterclaim in the Arbitration.

(b)     Alternatively, and only in the event that the Court finds that there is coverage under the Policy, a declaratory judgment that Berkley is only obligated to indemnify Holzman Horner up to $63,100—the amount Berkley recommended for settlement that Holzman Horner refused, and that Berkley's defense obligation is extinguished as of the date that Defendant refused to consent to the settlement proposal.

(c)     A declaratory judgment that Berkley is entitled to recoup all paid attorney's fees incurred for the defense of the Counterclaim and a corresponding judgment ordering Holzman Horner to pay to Berkley all attorney's paid in connection with defense of the Counterclaim in an amount to be proven at trial; and/or

(d)     A declaratory judgment that Holzman Horner is not entitled to recover for attorney time incurred by Holzman Horner in defense of itself against the Counterclaim.

(e)     Judgment for Berkley for reimbursement of all of the Claim Expenses it paid to defend the Aspen Counterclaim, or the portion of Claim Expenses it paid after Defendant refused consent to settle for $63,100 under either the Quasi Contract or Unjust Enrichment legal theories, in an amount to be determined at trial.

## JURY DEMAND

Berkley Insurance Company demands a trial by jury of all claims so triable.

DATED this 3d day of November, 2023.

Respectfully submitted,

_____
William H. White Jr., Esq. (D.C. Bar No. 461341)
Andrew S. Bassan, Esq. (D.C. Bar No. 1044744)
Kiernan Trebach LLP
1233 20th Street NW, 8th Floor

Washington, D.C. 20036
Tel: (202) 712-7000
wwhite@kiernantrebach.com
abassan@kiernantrebach.com
*Counsel for Plaintiff*
*Berkley Insurance Company*

18